[No. A118077. First Dist., Div. One. Aug. 15, 2008.]

RN SOLUTION, INC., et al., Plaintiffs and Respondents, v.
CATHOLIC HEALTHCARE WEST et al., Defendants and Appellants.

## COUNSEL

Latham & Watkins, Linda M. Inscoe and Heather E. Marlow for Defendant and Appellant Catholic Healthcare West.

Cooper, White & Cooper, Stephen D. Kaus and Edward L. Seidel for Defendant and Appellant Stephen Roderick Robertson.

Cotchett, Pitre & McCarthy, Joseph W. Cotchett, Nanci E. Nishimura and Laura Schlichtmann for Plaintiffs and Respondents.

## OPINION

**MARGULIES, J.**—RN Solution, Inc. (RNS), entered into a contract to recruit South Korean nurses for Catholic Healthcare West (CHW), which operates a chain of medical facilities. The contract contains a broad arbitration clause. Under disputed circumstances, RNS's chief executive officer (CEO), Tanya Woo, became involved in an intimate relationship with a CHW vice-president who oversaw the recruiting contract, Stephen Robertson. Woo ultimately pursued felony domestic battery charges against Robertson arising from their personal relationship. Less than a year after those charges were

filed, CHW terminated its contract with RNS, citing performance-related reasons.

■ Woo and RNS sued CHW and Robertson, alleging a series of interrelated contract, business tort, and personal injury claims. Defendants moved separately to compel arbitration of the claims against them. The trial court denied the motions and held that notwithstanding the arbitration agreement all of the claims must be tried in court pursuant to Code of Civil Procedure[1] section 1281.2, subdivision (c)(1). We reverse and hold that (1) the trial court lacked discretion under section 1280 et seq. to deny arbitration of causes of action covered by the arbitration clause, and (2) the battery-related tort claims do not come within the arbitration clause.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Prelawsuit Events*

CHW operates a system of 41 hospitals and medical centers in California, Arizona, and Nevada. Before leaving CHW's employment in December 2005, Robertson was a managing agent and a vice-president of human resources for CHW and worked out of its headquarters in San Francisco. RNS is a California corporation that recruits nurses in South Korea and places them in hospitals in the United States. Woo is RNS's president, CEO, and founder.

In 2001, CHW's Bay Area division began recruiting nurses from South Korea through an exclusive 36-month contract with RNS. Under the contract, RNS received a fee for each Korean nurse recruited by it and hired by CHW. In June 2005, RNS and CHW renewed the contract for another 36 months. Both agreements included mandatory "Dispute Resolution" provisions, which required that "any dispute between CHW and [RNS] aris[ing] out of the services contracted for in this Agreement" be resolved by a two-step process consisting of a "meet and confer" followed by arbitration. The arbitration step of the process was described in relevant part as follows: "Upon written demand by either party, and after exhaustion of the Meet and Confer process set forth above, any dispute arising out of or in connection with this Agreement, including any question regarding its existence, interpretation, validity or termination, shall upon written demand by either party, be referred to the American Arbitration Association . . . ." A choice-of-law provision in both agreements specified that they were to be construed and enforced "exclusively in accordance with the internal laws of the State of California."

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

The agreements were signed by an officer of CHW and by Woo on behalf of RNS.

In June 2002, CHW designated Robertson to manage the CHW contract and instructed Woo to report to him directly. In October 2003, Woo entered into a sexual relationship with Robertson and moved into Robertson's residence. Woo alleges that Robertson coerced her into the relationship by threatening her with the loss of RNS's exclusive contract and threatening to fire some of the nurses placed by RNS, if she did not give in to his demands.

According to Woo, Robertson soon began a pattern of violent and abusive behavior toward her at home when he drank. In a July 2004 incident, he yelled at her, choked her, and pushed her to the floor. In early October 2004, Robertson punched Woo in the face, causing swelling and damage to her left eye that required medical treatment. In December 2004, while the two were living temporarily in Woo's house, Woo sensed that Robertson was going to attack her and attempted to protect herself by barricading herself in a room. Robertson allegedly forced the door open, hit Woo in the face, and threw her on the floor. He threatened to use a razor on her and warned her not to leave him. When Robertson left the room, Woo fled to a neighbor's house and called 911. Robertson was arrested and charged with five felony counts, including two counts of corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a)), assault by means likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(1)), and false imprisonment (Pen. Code, § 236). Robertson ultimately pled guilty to two counts of felony vandalism for damage caused to a door and painting in Woo's house.

Robertson's responsibility for managing the RNS contract ended following his December 2004 arrest. According to Woo, this was not brought about at the initiative of CHW's management, but was necessitated by stay-away orders issued by the court. Woo alleges that beginning in the spring of 2005, she began to encounter resistance within CHW in her efforts to recruit nurses for the company. Woo wrote to the CHW board chair summarizing her relationship with Robertson, his threats to disrupt RNS's business relationship with CHW if Woo did not submit to his sexual demands, and his violence. Woo stated that RNS had not placed a single nurse with CHW following Robertson's arrest, and expressed her belief that CHW executives were retaliating against her for complaining about Robertson's conduct and for testifying at the preliminary hearing in the criminal proceedings against him. CHW's board chair wrote back advising that Woo's charges had been brought to the attention of CHW's senior leadership and that CHW had begun an investigation of them. Woo was informed at the end of August 2005, that CHW had found no evidence of retaliation against her or RNS.

In October 2005, CHW terminated RNS's contract, citing as material breaches by RNS that the nurses it recruited lacked "contractually required English language skills" and that RNS used the CHW logo without prior authorization. Woo and RNS rejected these grounds as demonstrably flimsy and pretextual. This lawsuit was filed in October 2006.

## B. *The Complaint*

Woo and RNS allege 16 causes of action: (1) breach of contract against CHW; (2) breach of the covenant of good faith and fair dealing against CHW; (3) sexual harassment in violation of Government Code section 12940, subdivision (j) against both defendants;[2] (4) retaliation in violation of Government Code section 12940, subdivision (h) against both defendants;[3] (5) sexual harassment in violation of Civil Code section 51.9 against both defendants;[4] (6) gender-based violence in violation of Civil Code section 51.7 against both defendants;[5] (7) gender violence in violation of Civil Code section 52.4 against Robertson;[6] (8) assault against Robertson; (9) battery against Robertson; (10) negligence against both defendants;[7] (11) defamation against both defendants;[8] (12) tortious interference with prospective economic advantage against both defendants;[9] (13) false imprisonment against

---

[2] Government Code section 12940, subdivision (j) makes it unlawful for any covered employer or person to harass "a person providing services pursuant to a contract" because of the latter person's sex.

[3] Government Code section 12940, subdivision (h) prohibits any person or entity from retaliating against a person for opposing any form of discrimination or sexual harassment forbidden under section 12940.

[4] Civil Code section 51.9 authorizes an award of damages for coercive sexual or gender-based conduct occurring in the context of a business relationship that the victim is unable to easily terminate.

[5] Civil Code section 51.7 provides that all persons have the right to be free from "violence, or intimidation by threat of violence" because of gender or other attributes. Woo alleges in this cause of action that CHW ratified, and aided and abetted Robertson's gender-based violence against her.

[6] Civil Code section 52.4 authorizes an award of civil damages to any person subjected to gender violence.

[7] Woo and RNS allege in part that CHW knew or should have known of Robertson's sexual harassment, violent tendencies, and drinking, and had a duty to take reasonable care to ensure that Woo would not suffer gender-based harassment or violence as a result of her business contacts with CHW.

[8] As to Robertson, Woo and RNS allege that he defamed her by falsely asserting that Woo attacked him and entered into a sexual relationship with him to ensure continuation of the business relationship between CHS and RNS. CHW is alleged to have defamed Woo and RNS by disparaging the quality of their services.

[9] Woo and RNS allege that Robertson sought to disrupt the economic relationship between RNS and CHW by physically attacking Woo in December 2004, and making false statements

Robertson; (14) intentional infliction of emotional distress against Robertson;[10] (15) declaratory relief against CHW;[11] and (16) injunctive relief against CHW.[12]

## C. *Motions to Compel Arbitration*

CHW and Robertson moved separately to compel arbitration. CHW sought to compel arbitration of all 11 causes of action asserted against it. Robertson sought to compel arbitration of all 16 causes of action or, if the court determined that not all causes of action were arbitrable, for an order requiring all causes of action to be tried in court.

The court denied both motions. The court found (1) all of the causes of action against CHW, except 6 and 15 (gender-based violence under Civ. Code, § 51.7 and declaratory relief regarding the arbitration clause), were arbitrable; (2) all causes of action against Robertson, except 6, 7, 8, 9, 13, and 14 (gender-based violence, gender violence, assault, battery, false imprisonment, and intentional infliction of emotional distress), were arbitrable; and (3) the arbitrable and nonarbitrable causes of action were so intertwined as to create a possibility of conflicting rulings on one or more common issues of fact or law if the court were to order the arbitrable claims to proceed to arbitration and the nonarbitrable claims to proceed in court. Based on these findings, the court deemed it appropriate to deny both motions and order all causes of action to be tried in court pursuant to section 1281.2, subdivision (c)(1).[13]

to CHW about their relationship and his attacks on her. CHW is alleged to have disrupted RNS's reimbursement for language training and other expenses that it received from the government of South Korea.

[10] This cause of action is based, without further specification, on all of Robertson's conduct as alleged in the complaint.

[11] Woo and RNS seek declaratory relief regarding the arbitration clause of the agreement and its application to the different causes of action of the complaint.

[12] Woo and RNS seek to enjoin CHW from making statements to CHW-affiliated and non-CHW-affiliated hospitals about RNS's ability to competently provide nurse referrals.

[13] Section 1281.2 provides in pertinent part that upon a motion to compel arbitration under a written arbitration agreement "the court shall order the petitioner and the respondent to arbitrate the controversy . . . unless it determines that: [¶] . . . [¶] (c) A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact[, in which case] [¶] . . . [¶] . . . the court (1) *may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding*; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding." (Italics added.)

CHW and Robertson timely appealed from the order denying their motions to compel arbitration.

## II.  DISCUSSION

### A.  *Application of Section 1281.2, Subdivision (c)*

When the motions to compel were litigated in the trial court, all parties apparently assumed that the "third party" provisions of section 1281.2, including subdivision (c)(1) through (4), would be applicable if the court found that the complaint included arbitrable as well as nonarbitrable claims and that there might be a risk of conflicting determinations if the two types of claims were decided in different forums. Once the court made those predicate findings, the only issue left for determination was whether it should exercise its discretion under that subdivision to deny arbitration of all claims or to grant the motion to compel as to specified claims and order either the court proceeding or arbitration stayed pending the outcome of the other. (See § 1281.2, subd. (c)(1)–(4).) On appeal, CHW argues for the first time that the third party provisions of section 1281.2 did not in fact apply, and therefore the court erred in believing it had the discretion to deny arbitration.

██  Appellate courts will generally not consider new theories raised for the first time on appeal. (*In re Marriage of Moschetta* (1994) 25 Cal.App.4th 1218, 1227 [30 Cal.Rptr.2d 893].) Exceptions exist, however, in cases where a new point of law is decided after the trial court proceedings (*Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 654, fn. 3 [209 Cal.Rptr. 682, 693 P.2d 261]) or where the new theory "presents a question of law to be applied to undisputed facts in the record." (*Hoffman-Haag v. Transamerica Ins. Co.* (1991) 1 Cal.App.4th 10, 15 [1 Cal.Rptr.2d 805].) Whether to apply this exception lies within the appellate court's discretion. (*Resolution Trust Corp. v. Winslow* (1992) 9 Cal.App.4th 1799, 1810 [12 Cal.Rptr.2d 510].) In this case, the facts relevant to the motions to compel—the language of the arbitration agreement, the parties who are bound by it, and the allegations of the complaint—are not in dispute. Further, it is at least arguable that the case upon which CHW principally relies, *Rowe v. Exline* (2007) 153 Cal.App.4th 1276 [63 Cal.Rptr.3d 787] (*Rowe*), which was decided after the appeal was filed in this case, established a new point of law regarding the interpretation of section 1281.2. Accordingly, we will exercise our discretion to consider CHW's argument regarding section 1281.2, subdivision (c) (hereafter section 1281.2(c)).

CHW's argument runs as follows: Subdivision (c)(1) through (4) of section 1281.2 is inapplicable because it requires that there be a pending court action between a party to the arbitration agreement and a "third party." The term "third party" for purposes of section 1281.2, must be construed to mean a party that is not bound by the arbitration agreement. Because all of the named parties in the underlying court action—Woo, RNS, CHW, and Robertson— are in fact bound by the arbitration agreement under ordinary principles of contract and agency law, there are no "third part[ies]" in this case and section 1281.2(c) does not apply.

*Rowe* was an appeal from an order denying motions to compel arbitration by a close corporation and two individual defendants who were founders, shareholders, and directors of the corporation. (*Rowe, supra,* 153 Cal.App.4th at p. 1279.) Plaintiff Rowe was a cofounder and former director of the corporation. (*Ibid.*) The arbitration agreement was contained in a settlement agreement under which Rowe had agreed to transfer his ownership interests in the corporation to the corporation, and to resign as a corporate director, in return for $428,500 in installment payments. (*Id.* at p. 1280.) Rowe signed the settlement agreement on his own behalf and the two defendants signed it as officers of the corporation. (*Ibid.*) Rowe sued all three defendants for breaching the settlement agreement, alleging that the corporation was merely an alter ego of the individual defendants. (*Id.* at pp. 1281–1282.) The complaint also asserted statutory causes of action under the Corporations Code against the individual defendants as well as the corporation. (*Id.* at p. 1281.) The trial court denied arbitration of any of the claims in reliance on section 1281.2, subdivision (c)(1). (*Rowe,* at pp. 1282, 1290.) The trial court found that Rowe, a party to the arbitration agreement, was also a party to the pending court action with third parties, the individual defendants, arising out of the same transaction, the settlement agreement, and that conflicting rulings on common issues were possible. (*Id.* at p. 1283.)

The Court of Appeal reversed. It held as an initial matter that whether the individual defendants were in fact " 'third parties' " for purposes of section 1281.2(c) was a matter of law subject to de novo review. (*Rowe, supra,* 153 Cal.App.4th at p. 1282.) The appellate court further held that the individual defendants, although nonsignatories to the arbitration agreement, could enforce the arbitration agreement against Rowe because of his allegation that the corporation was an alter ego of these individuals.[14] (153 Cal.App.4th at pp. 1284–1286.)

---

[14] Although it is not material here, the *Rowe* court also held based on an estoppel theory that these defendants could enforce the arbitration clause as to all of Rowe's claims. (*Rowe, supra,* 153 Cal.App.4th at pp. 1286–1290.)

■ Finally, in the passage that is of primary importance here, *Rowe* held that section 1281.2(c) did not apply on these facts because no court action *against a third party* was pending: "Section 1281.2, subdivision (c), on which the trial court relied to deny arbitration, provides an exception to mandatory arbitration where '[a] party to the arbitration agreement is also a party to a pending court action . . . *with a third party*, arising out of the same transaction or series of transactions and there is a possibility of conflicting rulings on a common issue of law or fact.' (Italics added.) [¶] As our Supreme Court has explained: ' "Section 1281.2(c) addresses the peculiar situation that arises when a controversy also affects claims by or against *other parties not bound by the arbitration agreement.* The California provision giving the court discretion not to enforce the arbitration agreement under such circumstances . . . avoid[s] potential inconsistency in outcome as well as duplication of effort . . . ." ' (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393 [25 Cal.Rptr.3d 540, 107 P.3d 217], italics added.) [¶] Because [the individual defendants] may enforce arbitration of the claims against them, they are not 'third part[ies]' within the meaning of section 1281.2, subdivision (c). Section 1281.2, subdivision (c) therefore does not apply, and the trial court erred in denying arbitration on this ground." (*Rowe, supra,* 153 Cal.App.4th at p. 1290.)

In our view, the analysis in *Rowe* applies with equal force here. CHW and RNS are clearly not third parties because they are both direct signatories of the arbitration agreement. Woo, although she signed the arbitration agreement only in her capacity as RNS's president and CEO, benefited financially and professionally from the recruitment agreement between RNS and CHW, as alleged in her complaint. She is bound by the arbitration agreement both as an agent-employee of RNS and as a third party beneficiary of the CHW-RNS recruitment agreement. (See *Harris v. Superior Court* (1986) 188 Cal.App.3d 475, 478 [233 Cal.Rptr. 186] [employee of corporation that is party to arbitration agreement is bound by agreement]; *NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 81–82 [100 Cal.Rptr.2d 683] [person who accepts benefits under agreement containing arbitration clause is bound by clause].) Robertson was CHW's agent with respect to the recruitment agreement. The complaint alleges that he was a managing agent and vice-president of human resources within the company. As such, he is also bound by the arbitration agreement and entitled to enforce it. (See *Harris,* at p. 478; *Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 418 [220 Cal.Rptr. 807, 709 P.2d 826] ["[i]f, as the complaint alleges, the individual defendants, though not signatories, were acting as agents for the Rams, then they are entitled to the benefit of the arbitration provisions"].)

■ Since all of the parties involved in the lawsuit are bound by the arbitration agreement, the fundamental condition for the application of section 1281.2(c)—a pending court action or special proceeding between a party to the arbitration agreement and a third party—is absent. Contrary to plaintiffs' contention, the fact that Woo and Robertson could not compel arbitration of the battery-related claims does not make them third parties for purposes of section 1281.2. No party to the court proceeding could compel arbitration of those claims because they do not come within the coverage of the arbitration clause. The mere fact that some claims are arbitrable and some are not is surely not the "peculiar situation" meant to be addressed by section 1281.2(c) according to our Supreme Court. (*Cronus Investments, Inc. v. Concierge Services, supra,* 35 Cal.4th at p. 393.)[15]

The trial court therefore erred in proceeding under the third party provisions of section 1281.2(c). Instead, the court should have first determined the arbitrable and nonarbitrable claims alleged in the complaint, ordered all of the arbitrable claims to arbitration, and stayed all such claims pending arbitration. The court would then have had discretion to delay its order to arbitrate the arbitrable claims under section 1281.2(c), only if it first determined that the adjudication of the nonarbitrable claims in court might make the arbitration unnecessary.[16] Absent that determination, the arbitrable claims would proceed to arbitration and the nonarbitrable claims would continue to be litigated in court unless a party moved successfully pursuant to section 1281.4, to stay

---

[15] At oral argument, Robertson cited a passage at the top of page 1286, in *Rowe, supra,* 153 Cal.App.4th 1276, for the proposition that a party who is bound to arbitrate one or more causes of action in a proceeding brought in court is nonetheless considered a third party for purposes of section 1281.2(c) with respect to any *other* causes of action in the litigation which that party is *not* bound to arbitrate. Robertson misreads *Rowe* in that regard. In addressing the just-described scenario, although the *Rowe* court stated that the trial court would have discretion to stay the arbitration of the arbitrable claim, the discretion it is alluding to is *not* the broad discretion afforded by the last paragraph of section 1281.2(c), when there is a third party involved in the litigation. The court is referring instead to the much narrower discretion provided under the *third* paragraph of subdivision (c), see footnote 16, *post,* when there is no third party involved, but there are nonarbitrable as well as arbitrable issues before the court. (See citation to § 1281.2(c), 3d par., in *Rowe,* at p. 1286.) Nothing in the passage undermines the fundamental point that the last paragraph of section 1281.2(c) has no application unless there is at least one party enmeshed in the litigation that is not bound to arbitrate any of the claims asserted.

[16] The third paragraph of section 1281.2(c), which applies when there is no third party involved in the court proceeding, provides in relevant part: "If the court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action or special proceeding between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies."

further litigation of such nonarbitrable claims.[17] (§ 1281.4 ["[i]f a court . . . has ordered arbitration of a controversy which is an issue involved in an action . . . before [the] court . . . [it] shall, upon motion of a party . . . , stay the action . . . until an arbitration is had . . ."]; *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 320 [133 Cal.Rptr.2d 58, 66 P.3d 1157] ["when there is a severance of arbitrable from inarbitrable claims, the trial court has the discretion to stay proceedings on the inarbitrable claims pending resolution of the arbitration"]; *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 714 [131 Cal.Rptr. 882, 552 P.2d 1178] [court may limit any stay to those issues subject to arbitration].) We turn now to the arbitrability issues raised on appeal.

## B.  *Arbitrability of Plaintiffs' Claims*

The trial court found that the following causes of action were not subject to the parties' arbitration agreement: sixth (Civ. Code, § 51.7 gender-based violence claims asserted against both defendants); seventh (Civ. Code, § 52.4 gender violence against Robertson); eighth (assault against Robertson); ninth (battery against Robertson); 13th (false imprisonment against Robertson); 14th (intentional infliction of emotional distress against Robertson); and 15th (declaratory relief regarding arbitrability of claims). Neither CHW nor plaintiffs challenge the trial court's determination of which causes of action were arbitrable. Robertson asserts that all of the causes of action—including those based on acts of violence he is alleged to have committed against Woo in her home—were arbitrable under the language of the arbitration clause.

We review the scope of an arbitration provision de novo when, as here, that interpretation does not depend on conflicting extrinsic evidence. (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 684 [99 Cal.Rptr.2d 809].) It is true, as Robertson points out, that claims framed in tort are subject to contractual arbitration provisions when they arise out of the contractual relationship between the parties. (*Dryer v. Los Angeles Rams, supra,* 40 Cal.3d at p. 418, fn. 12.) Thus, the phrase "all disputes arising in connection with this agreement" has been construed to include "every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in

---

[17] We note that no request to stay any nonarbitrable claims was pending in the trial court when it denied CHW's motion. CHW's motion to compel arbitration requested that the arbitrable claims be stayed pending arbitration. RNS and Woo took the position that none of the claims were arbitrable, and Robertson took the position that all of the claims should have been either compelled to arbitration or tried in court. We express no opinion as to whether any nonarbitrable claims should be stayed but note only that the court has no discretion to grant that relief absent a motion therefor.

the contract," including antitrust, trade secrets, defamation, and misrepresentation claims. (*Simula, Inc. v. Autoliv, Inc.* (9th Cir. 1999) 175 F.3d 716, 720–725.)

At the same time, even a broad form arbitration clause will not cover every type of dispute that might arise between those bound by it. "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." (Civ. Code, § 1648.) "Although '[t]he law favors contracts for arbitration of disputes between parties' [citation], ' "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . ." ' [Citations.] In determining the scope of an arbitration clause, '[t]he court should attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made [citation].' [Citation.]" (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744 [222 Cal.Rptr. 1, 710 P.2d 833] (*Victoria*).)

The arbitration clause in issue was part of an agreement between two business entities governing their business relationship. While the language of the arbitration provision might be broadly construed to cover every type of business dispute that might arise between the two signators, it cannot seriously be argued that the parties intended it to cover tort claims arising from an alleged violent physical assault by an employee of one company against an employee of the other in the context of an intimate domestic relationship between them. Such a possibility could not have been within the parties' contemplation when the language was agreed to, and nothing in the language remotely suggests that it was intended to apply to personal injury tort claims arising outside of the business relationship between CHW and RNS. (Cf. *Victoria, supra,* 40 Cal.3d at pp. 738, 745 [hospital and patient could not have contemplated or expected that patient would be sexually assaulted by hospital employee during her hospital stay and therefore could not have intended such an attack to come within the scope of an arbitration clause covering "bodily injury arising from rendition or failure to render services" (italics omitted)].)

It is true (if the allegations of the complaint are taken at face value) that Robertson would not have been in a position to force Woo into a violent sexual relationship *but for* the business relationship between CHW and RNS. But even assuming those allegations to be true, it would still be an extreme semantic stretch to claim that Woo's battery-related claims against Robertson bear a "significant relationship" to, or have "their origin or genesis" in the contract. (*Simula, Inc. v. Autoliv, Inc., supra,* 175 F.3d at p. 721.) The parties do not cite and we have not found any case in which an employee claimed

that a broad arbitration clause in a business contract covered his commission of violent intentional torts. The few courts that have discussed hypothetical claims of that nature have treated them dismissively, using them to illustrate the principle that even the broadest arbitration clauses obviously cannot cover every type of dispute that might arise. (See *Medical Staff of Doctors Medical Center in Modesto v. Kamil* (2005) 132 Cal.App.4th 679, 684 [33 Cal.Rptr.3d 853] [defamation claim would no more come within the terms of an arbitration clause covering any dispute concerning the terms of contract between medical insurer and physician group than would "a punch in the nose" during a dispute over medical billing]; *Coors Brewing Co. v. Molson Breweries* (10th Cir. 1995) 51 F.3d 1511, 1516 ["if two small business owners execute a sales contract including a general arbitration clause, and one assaults the other, we would think it elementary that the sales contract did not require the victim to arbitrate the tort claim because the tort claim is not related to the sales contract"]; *Stone v. Doerge* (N.D.Ill. 2002) 245 F.Supp.2d 878, 883, affd. (7th Cir. 2003) 328 F.3d 343 [agreeing with *Coors Brewing*].)

We therefore reject Robertson's claim that the battery-related causes of action in the complaint are arbitrable. However, there remains a valid question concerning the arbitrability of plaintiffs' 14th cause of action for intentional infliction of emotional distress, against Robertson. To the extent that this cause of action is predicated on Robertson's assaultive behavior in Woo's home, it is nonarbitrable for the reasons we have stated. But as pleaded, the emotional distress cause of action is based on all of Robertson's behavior as alleged in the complaint, not exclusively on his alleged assaultive behavior. This could include conduct occurring within the context of the parties' business relationship, such as Robertson's alleged sexual harassment and defamation of Woo, that is arbitrable. On remand, the trial court should request clarification from plaintiffs of the scope of this claim and reconsider the issue of its arbitrability accordingly.

## III. DISPOSITION

The order denying CHW's and Robertson's motions to compel arbitration is reversed, and the matter is remanded for further proceedings consistent with the views expressed in this opinion. In particular, the trial court should (1) enter an order compelling arbitration of and staying court proceedings on all causes of action of the complaint except the sixth, seventh, eighth, ninth, 13th, 14th, and 15th causes of action; (2) reconsider the arbitrability of the 14th cause of action unless plaintiffs agree to limit its scope to Robertson's alleged physically assaultive conduct; and (3) decide pursuant to the third paragraph of section 1281.2(c) whether a determination of the nonarbitrable issues might make the arbitration unnecessary and, if so, whether the

arbitration order should be delayed. We express no opinion as to whether the arbitration order should be delayed under the third paragraph of section 1281.2(c) or whether the nonarbitrable claims should be stayed pending arbitration upon a motion therefor under section 1281.4.

CHW is to recover its costs on appeal.

Marchiano, P. J., and Stein, J., concurred.