Filed 11/23/22 Backrak v. Grass Valley Mobile Home Park CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| JULIAN M. BACKRAK et al., | C094434 |
| Plaintiffs and Respondents, | (Super. Ct. No. CU-20084651) |
| v. | |
| GRASS VALLEY MOBILE HOME PARK et al., | |
| Defendants and Appellants. | |

Defendants Grass Valley Mobile Home Park, LLC, Grass Valley MHP, LLC, Grass Valley MHP-W, LLC, and Waterhouse Management Corp. (collectively defendants) appeal from the denial of their petition to compel alternative dispute resolution (ADR) procedures. (Code Civ. Proc., § 1294, subd. (a).)[1] The trial court

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

denied defendants' petition in part because there was a possibility of conflicting rulings between the arbitration and the court case. (§ 1281.2, subd. (c).)

On appeal, defendants argue the contractual ADR provisions in plaintiffs' lease agreements are valid and enforceable, the trial court was required to enforce the ADR provisions pursuant to the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.), and the ADR provisions were also valid and enforceable under California law. We disagree and affirm the trial court's order denying the petition to compel.

## FACTS AND PROCEEDINGS

*Factual Background*

This case arises out of plaintiffs' tenancies at Grass Valley Mobile Home Village (the Park), located in Grass Valley, California. The 56 plaintiffs allege they are all current or former residents and tenants of the Park.[2] Almost all plaintiffs owned their respective mobile homes but rented spaces from defendants. Defendants are alleged to have owned, operated, or managed the Park. The Park contains 105 spaces for mobile homes and recreational vehicles.

As owners of their mobile homes, but tenants on the lots on which the mobile homes sit, plaintiffs are responsible for maintaining their dwelling units, but defendants are responsible for maintaining the Park's common facilities including utility systems, common areas, and common use structures. (Cal. Code Regs., tit. 25, § 1102, subds. (a), (b).)

---

[2] The parties disagree as to the number of spaces the 56 plaintiffs occupied. Plaintiffs contend they occupied 42 spaces. Defendants assert that plaintiffs occupied 37 or 38 spaces. This discrepancy is immaterial to our resolution of the issues on appeal.

*ADR Provisions*

Plaintiff's lease agreements, on which they base this action, contain various ADR provisions for addressing alleged deficiencies within the Park. There were five different forms of the lease agreement.

Lease types 1 and 2 required the homeowner to notify defendants in writing anytime the homeowner believed there existed a deficiency in the maintenance, repair, or upkeep in the common areas or utility systems of the Park, and to request that the deficiency be remedied (notice-and-cure provision). The separate, optional arbitration provision provided that, if a dispute remained after notifying defendants and providing the opportunity to cure the deficiency, either the homeowner or defendants could require that the parties submit to arbitration, which was the "sole and exclusive legal remedy for disputes" regarding those at issue in the notice-and-cure provision. (Capitalization omitted.) The arbitration clause provided that if the arbitration provision was deemed unenforceable, the parties must submit to judicial reference pursuant to section 638.

Lease types 3 and 4 included an optional four-step dispute resolution procedure: (1) a notice-and-cure provision; (2) informal meeting between the parties; (3) complaint to and investigation by the Department of Housing and Community Development (HCD); and (4) binding arbitration.

Lease type 5 included a three-part optional dispute resolution procedure: (1) a notice-and-cure provision, (2) informal meeting between the parties, (3) binding arbitration.

Defendants failed to present leases for some plaintiffs, and presented deficient leases for others. Defendants acknowledge they presented lease agreements including arbitration provisions for only 26 of the 37 or 38 Park spaces leased by plaintiffs.

3

Defendants failed to produce any leases for 12 plaintiffs,[3] and of the leases with ADR provisions provided, five leases were not signed by the plaintiff,[4] 10 leases included ADR provisions were not initialed after each paragraph as required,[5] one lease included the plaintiffs' rejection of the ADR provision by circling "No" throughout the agreement,[6] one lease is an incomplete copy with no initials or signature by the plaintiff, who contests the validity of the lease,[7] and the authenticity of another lease is contested.[8]

*Complaint*

Plaintiffs filed a complaint on April 29, 2020, and they filed the operative first amended complaint on September 3, 2020. The first amended complaint alleged causes of action on behalf of all plaintiffs for nuisance, breach of contract, breach of the covenant of good faith and fair dealing, negligence, breach of statutes, breach of the warranty of habitability, breach of the covenant of quiet enjoyment, breach of the unfair competition law, and it sought declaratory and injunctive relief. The causes of action center around the allegation that defendants "fail[ed] to provide and maintain the Park's common areas, facilities, services, and physical improvements in good working order and condition."

---

[3] Constance Suzette Hallford, Jeffrey Lee Hallford, Georgine Jamison, Jacqueline Jamison, Joni Kathleen Logan, Brian Wade Maddock, Joan Cecile Manley, Michael S. Manley, Ann Mayo, Shevawn McCafferty, David Ruggiero, and Mary C. Sailor.

[4] Jennifer M. Bower, Tambra Lively, Tamara Meek, Katie Penrose, Kellie Patricia Scott.

[5] Katherine Hatten, Matthew Chaplin, Nelson Oroszi, Elizabeth Mantle, Margie Jean Means, Daniel Z. Brokaw, Richard Christopher Rasmussen, Nancie L. Lawrence, Lorrisa A. Berglund, and Ronald Louis Clark.

[6] Shannon L. Gassaway and Dustin Gerbracht.

[7] Patricia Lynn Wilson.

[8] Julian Backrak.

*Petition to Compel Compliance with ADR Provisions*

Defendants filed a petition to compel compliance with the contractual ADR provisions pursuant to sections 1281.2 and 1281.4. They argued the lease agreements included notice-and-cure provisions, and separately that the agreements included ADR procedures where issues remained unresolved. The petition sought to stay plaintiffs' lawsuit pending compliance with contractual prefiling ADR procedures and to stay the suit as to the plaintiffs whose lease agreements did not contain an arbitration provision, pending the resolution of the ADR process. Defendants' petition further asserted that the FAA mandates that arbitration agreements affecting interstate commerce be arbitrated. In support, defendants submitted declarations of park management and copies of plaintiffs' rental agreements.

Plaintiffs opposed the petition; they argued defendants' argument failed as to 28 of the 56 plaintiffs due to an absence of a valid arbitration agreement, compelling arbitration could lead to inconsistent rulings (§ 1281.2, subd. (c)), the arbitration provisions were void as contrary to public policy, the arbitration provisions were unconscionable, the FAA does not apply, and, if the court did compel arbitration, it should stay arbitration pending completion of trial. They supported their opposition with declarations of multiple plaintiffs and evidentiary objections.

Following a hearing, the trial court denied defendants' petition based on the "significant likelihood" of conflicting rulings on common issues of law and fact if some plaintiffs' claims proceeded to arbitration and others remained in superior court. (§ 1281.2, subd. (c).) As an alternative basis for denying the petition, the court ruled that the arbitration provisions were void under Civil Code section 798.19. Defendants did not request a statement of decision, and timely appealed. The case was fully briefed in July 2022, and assigned to the current panel on July 29, 2022. Defendants requested argument and the matter was heard and then deemed submitted on November 15, 2022.

## DISCUSSION

### I

*Potential for Inconsistent Rulings*

Defendants contend the trial court improperly denied their petition to compel ADR procedures on the basis that there was a potential for inconsistent rulings on common issues of law or fact. We disagree.

A. *Legal Principles*

"California law reflects a strong public policy in favor of arbitration as a relatively quick and inexpensive method for resolving disputes." (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 967 (*Acquire II*).) To further that policy, section 1281.2 provides in relevant part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] . . . [¶] (c) A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact."

Section 1281.2, subdivision (c) is unambiguous: "[I]t allows the trial court to deny a motion to compel arbitration whenever 'a party' to the arbitration agreement is also 'a party' to litigation with a third party that (1) arises out of the same transaction or series of related transactions, and (2) presents a possibility of conflicting rulings on a common issue of law or fact." (*Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 486.) "The term 'third party' for purposes of section 1281.2[, subdivision (c)], must be construed to mean a party that is not bound by the

6

arbitration agreement." (*RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1519.)

If each of section 1281.2, subdivision (c)'s conditions are satisfied, the statute "grants a trial court discretion to either deny or stay arbitration despite an agreement to arbitrate the dispute." (*Acquire II*, *supra*, 213 Cal.App.4th at p. 968.) Specifically, the trial court may: "(1) 'refuse to enforce the arbitration agreement and . . . order intervention or joinder of all parties in a single action or special proceeding'; (2) 'order intervention or joinder as to all or only certain issues'; (3) 'order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding'; and (4) 'stay arbitration pending the outcome of the court action or special proceeding.' " (*Ibid.*, quoting § 1281.2.)

B.  *Standard of Review*

Our standard of review hinges on whether defendants requested a statement of decision pursuant to section 632, which provides that a trial court must issue of statement of decision following " 'the trial of a question of fact by the court' " that explains " 'the factual and legal basis for [the court's] decision as to each of the principal controverted issues at trial.' " "California's statutory scheme regarding contractual arbitration also requires a statement of decision for any ruling denying a motion to compel arbitration if a party requests one." (*Acquire II*, *supra*, 213 Cal.App.4th at p. 970, citing § 1291.)

Section 1291 authorized defendants to request a statement of decision on the issue whether plaintiffs satisfied section 1281.2, subdivision (c)'s conditions to vest the trial court with discretion to deny defendants' petition to compel ADR.  Having failed to do so, defendants forfeited any objection based on the trial court's failure to make all findings necessary to support its ruling under section 1281.2, subdivision (c), and we apply the doctrine of implied findings and presume the trial court made all necessary findings supported by substantial evidence. (*Acquire II*, *supra*, 213 Cal.App.4th at pp.

7

970-971.) Accordingly, the issue before us is whether the record supports the implied finding regarding each of section 1281.2, subdivision (c)'s conditions. (*Acquire II*, at p. 971.) In other words, "the issue is not whether the trial court abused the discretion granted by section 1281.2[, subdivision (c)], but whether the trial court erred in deciding section 1281.2[, subdivision (c)] applied." (*Ibid.*)

Thus, while we recognize that a trial court's discretionary decision to deny a petition for arbitration is generally subject to review for abuse of that discretion (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1406), the court's decision as to whether section 1281.2, subdivision (c) applies is either reviewed de novo (where the court based its decision on a legal determination) or for substantial evidence (where the court based its decision on a factual determination) (*Acquire II*, *supra*, 213 Cal.App.4th at p. 972). "Whether there are conflicting issues arising out of related transactions is a factual determination subject to review under the substantial evidence standard." (*Ibid.*)

Because section 1281.2, subdivision (c) requires only that the trial court find the " 'possibility' of conflicting rulings on legal or factual issues," the factual allegations in plaintiffs' first amended complaint may constitute substantial evidence sufficient to support the court's finding that section 1281.2, subdivision (c) applies. (*Abaya v. Spanish Ranch I, L.P.* (2010) 189 Cal.App.4th 1490, 1498-1499.) Accordingly we disagree with defendants to the extent they argue that "[plaintiffs] presented no evidence to support" the trial court's ruling pursuant to section 1281.2, subdivision (c).

C. *Analysis*

Defendants do not appear to dispute that they, as a party to the ADR provisions of the lease agreements, are party to litigation with third parties, who are not subject to the ADR provisions. To the extent they do raise this argument, it lacks merit. Defendants acknowledge there are multiple plaintiffs for whom no lease agreement has been presented, and, thus it cannot be disputed that defendants are party to litigation with those

8

third parties. Similarly, the parties do not appear to dispute that the case here arises out of a series of related transactions; the lease agreements at issue here clearly satisfy that requirement.

Defendants' limited argument regarding this basis for the trial court's holding centers on section 1281.2, subdivision (c)'s requirement that the third party litigation presents a possibility of conflicting rulings on a common issue of law or fact. (See *Whaley v. Sony Computer Entertainment America, Inc.*, *supra*, 121 Cal.App.4th at p. 486.) They argue that plaintiffs failed to demonstrate that their claims involved common issues, noting instead that this action involves individual claimants who each would have separate claims and damages.

At the outset, we observe that defendants conceded this very issue before the trial court during oral argument on their petition. Defendants' counsel stated: "I recognize the court's concern about potentially conflicting rulings doing arbitration and ADR. I recognize the court can find that as a concern." Nevertheless, counsel argued that proceeding with "efficient alternative dispute resolution" for some of the claims "would be beneficial and inform the rest of the case."

The fact that individual damages may vary does not negate the fact that there are multiple common issues of law and fact. Each cause of action in the first amended complaint was raised on behalf of all plaintiffs and centered on the allegation that defendants breached their duty to maintain the sewer, water, electrical, gas and drainage systems, and the common areas including the Park's amenities. Indeed, defendants acknowledge: "All of [plaintiffs'] claims are based upon alleged deficiencies in the Park." Whether defendants are liable to plaintiffs for such inadequate maintenance presents common questions of law and fact. Additionally, plaintiffs' request for declaratory and injunctive relief presents common questions.

Resolution of these common questions of law and fact in different fora has the potential to result in inconsistent rulings on those issues. Indeed, "contractual arbitration

9

generally frees the arbitrator from making a decision strictly in accordance with the law." (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 345.)  In other words, it is not necessarily true that the trial court and arbitrator would be applying the same law to the facts.  There is substantial evidence to support the trial court's ruling regarding the potential for inconsistent rulings.

This case is similar to *Abaya v. Spanish Ranch I, L.P.*, *supra*, 189 Cal.App.4th 1490, in which approximately 120 mobile home park residents sued the park's owners, alleging a variety of claims based on the owners' failure to maintain the park's common facilities.  Many of the plaintiffs' leases included an arbitration provision, but several did not.  Based on section 1281.2, subdivision (c), the trial court denied the owners' motion to compel the plaintiffs with arbitration agreements to arbitrate their claims.  (*Abaya*, at pp. 1493-1496.)  The appellate court affirmed the trial court's decision because whether the park owners adequately maintained the common facilities was an issue common to each plaintiff's claim regardless of whether the lease included an arbitration provision. Resolving this common issue in different fora could lead to conflicting rulings.  (*Id.* at p. 1498.)

Defendants contend the trial court erred by specifically referencing "arbitration," but failing to address the existence of nonarbitration ADR provisions in the various lease agreements.  They support that argument by asserting that plaintiffs failed to cite legal authority that "preclude[s] enforcement of the ADR provisions that [plaintiffs] had agreed to in their rental agreements."  (Emphasis omitted.)  This argument misapprehends the nature of the trial court's ruling, which did not conclude that the ADR provisions were unenforceable, but rather that compelling some plaintiffs to engage in the various forms of ADR to which they had agreed created the "significant likelihood" of inconsistent rulings.  As we have discussed, substantial evidence supported that finding, and thus supported the court's subsequent decision to deny defendants' motion.

To the extent defendants argue the trial court's ruling did not extend to other ADR procedures because it expressly only referred to "arbitration," we note first that defendants brought their motion pursuant to sections 1281.2 and 1281.4, which, as we have discussed, expressly refer to arbitration. Section 1281.2 provides in part: "On petition of a party to an *arbitration agreement* alleging the existence of a written *agreement to arbitrate* a controversy and that a party to the agreement *refuses to arbitrate* that controversy, the court shall order the petitioner and the respondent to *arbitrate* the controversy if it determines that an *agreement to arbitrate* the controversy exists." (§ 1281.2, italics added.) Section 1281.4 provides in part: "If a court of competent jurisdiction, whether in this State or not, has ordered *arbitration* of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an *arbitration* is had in accordance with the order to arbitrate or until such earlier time as the court specifies." (Italics added.)

Moreover, there is nothing in the trial court's ruling that suggests the ruling was meant to extend only to arbitration and not to the remainder of the ADR procedures in the lease agreements, which all culminate in binding arbitration. Here, as plaintiffs argued, enforcing the contractual ADR procedures such as the notice-and-cure provision included in the ADR procedures in lease types 3, 4, and 5 would ultimately culminate in binding arbitration and could lead to inconsistent results.

Further, we note that defendants refer to the ADR provisions as "arbitration agreements" at various points in their briefing. As we have discussed, there is substantial evidence supporting each of section 1281.2, subdivision (c)'s requirements, including the requirement that compelling plaintiffs to pursue the various forms of ADR to which they agreed in the lease agreements--many of which required binding arbitration--while

11

allowing some plaintiffs to litigate in court would have possibly resulted in inconsistent rulings.

Finally, defendants argue that the trial court should have granted the petition to compel ADR procedures and then stayed the judicial proceedings pursuant to section 1281.4, which would have eliminated the potential for inconsistent rulings. But as we have discussed, the trial court had broad discretion in determining how to proceed after finding that section 1281.2 applied. (*RN Solution, Inc. v. Catholic Healthcare West*, *supra*, 165 Cal.App.4th at p. 1521, fn. 15 [broad discretion is afforded by the last paragraph of section 1281.2, subdivision (c), when there is a third party involved in the litigation].) Thus, while the court *could* have ordered arbitration and stayed the pending litigation (§ 1281.2), it was not required to. That the court "might reasonably have chosen some other means to avoid a conflicting ruling on a common issue of law or fact" is "immaterial." (*Mercury Group v. Superior Court*, *supra*, 19 Cal.4th at p. 351.) "The reasonableness of an approach that was not selected does not entail the unreasonableness of the one that was." (*Ibid*.) Although there is a "strong California policy favoring arbitration," there is an "equally compelling argument that the Legislature has also authorized trial courts to refuse enforcement of an arbitration agreement when, as here, there is a possibility of conflicting rulings." (*C.V. Starr & Co. v. Boston Reinsurance Corp.* (1987) 190 Cal.App.3d 1637, 1642.) Because the requirements of section 1281.2, subdivision (c) are supported by substantial evidence, defendant's argument lacks merit.

The trial court did not err by denying defendants' petition given the potential of inconsistent rulings on common issues of law or fact.[9]

---

[9] Defendants spend a considerable amount of space in their briefing discussing *The McCaffrey Group, Inc. v. Superior Court* (2014) 224 Cal.App.4th 1330, and they generally accuse the trial court and plaintiffs of ignoring this case they claim is directly on point. But *McCaffrey* does not address the applicability of section 1281.2, subdivision (c) to the circumstances here, and therefore we decline to discuss it further.

II

*FAA*

Defendants contend that section 1281.2 does not apply here because this case involves interstate commerce and therefore is preempted by the FAA. We disagree.

A. *Legal Background*

The FAA "does not include a provision comparable to . . . section 1281.2[,] [subdivision] (c) and therefore requires courts to enforce written arbitration agreements even if there is pending litigation involving a third party that may result in conflicting rulings. [Citation.] The FAA applies to agreements to arbitrate disputes arising from a contract involving interstate commerce and it preempts all state laws and rules that conflict with its provisions or its objective of enforcing arbitration agreements." (*Acquire II*, *supra*, 213 Cal.App.4th at p. 968; see 9 U.S.C. § 2 [FAA applies to a "contract evidencing a transaction involving commerce"].)

The high court has interpreted "involving commerce" to be the functional equivalent of "affecting commerce," even where the parties did not contemplate an interstate commerce connection. (*Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 281.) The commerce clause power could be exercised to preempt state law without showing any effect upon interstate commerce if, in the aggregate, the economic activity represents " 'a general practice . . . subject to federal control.' " (*Citizens Bank v. Alafabco, Inc.* (2003) 539 U.S. 52, 56-57.) "Only that general practice need bear on interstate commerce in a substantial way." (*Ibid.*)

The party asserting FAA preemption has the burden of demonstrating that the subject matter of the agreement involves interstate commerce. (*Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 687.) "Where the facts are undisputed, the question of whether the transaction involves interstate commerce so as to implicate the [FAA] is a question of law subject to de novo review." (*Scott v. Yoho* (2016) 248 Cal.App.4th 392, 399.) Generally we review the trial court's resolution of disputed facts

13

for substantial evidence (*Giuliano v. Inland Empire Personnel, Inc.* (2007) 149 Cal.App.4th 1276, 1284), but because defendants failed to request a statement of decision, we apply the doctrine of implied findings and presume the trial court made all necessary findings supported by substantial evidence (*Acquire II*, *supra*, 213 Cal.App.4th at pp. 970-971).

B. *Analysis*

Defendants argue that this case involves interstate commerce for three reasons: (1) the Park is open to persons relocating from outside California, some residents have relocated from outside California, and some residents correspond with the Park from outside California; (2) the lease agreements involve Park spaces on which to locate mobile homes or recreational vehicles that are or have been capable of being moved on the highway and licensed to travel on the highways (see Civ. Code §§ 798.3, subd. (a) [" 'mobilehome' " defined in part as "a structure designed for human habitation and for being moved on a street or highway under permit"], 799.29 [recreational vehicle has same definition as in Health & Saf. Code, § 18010]; Health & Saf. Code, § 18010, subd. (a)(4) [recreational vehicle "is either self-propelled, truck-mounted, or permanently towable on the highways without a permit"]); and (3) all of the mobile homes were manufactured outside of the Park, many were manufactured outside of California, and federal law governs the manufacture of new mobile homes (see, e.g., 42 U.S.C. § 5401 et seq.). We address defendants' arguments in turn.

First, we disagree with defendants that the lease agreements involve interstate commerce because the Park is open to persons relocating from out-of-state, some residents have relocated from out-of-state, and some residents have corresponded with the Park from outside California. Multiple authorities have held that out-of-state residence, by itself, does not render the FAA applicable. (See *SI V, LLC v. FMC Corp.* (N.D. Cal. 2002) 223 F.Supp.2d 1059 [FAA inapplicable to the purchase of real property even though seller was an out-of-state entity], citing *Cecala v. Moore* (N.D. Ill. 1997)

14

982 F.Supp. 609, 612 [FAA inapplicable in real estate sale contract despite out-of-state seller because no "transactions incident to the sale took place outside [of the state]"]; *Garrison v. Palmas del Mar Homeowners Assn., Inc.* (D.P.R. 2008) 538 F. Supp. 2d 468, 473 ["[t]he FAA generally does not apply to residential real estate transactions that have no substantial or direct connection to interstate commerce, regardless of whether said transactions involve out-of-state purchasers"].)  The citizenship of the parties is incidental to the nature of the relevant transaction, which is to lease space in a mobile home park in California.  The performance of the lease agreement is to occur entirely in California, and all of the legal relationships concerning the transaction are bound by state law principles.

Second, we disagree with defendants that the lease agreements involve interstate commerce because mobile homes and recreational vehicles are capable of being driven on the highways.  As plaintiffs point out, our Legislature recognized in the Mobilehome Residency Law (Civ. Code, § 798 et seq.) that mobile homes, despite their names, are largely immobile due to "the high cost of moving mobilehomes, the potential for damage resulting therefrom, [and] the requirements relating to the installation of mobilehomes." (Civ. Code, § 798.55, subd. (a).)  As our Supreme Court has pointed out:  " 'The term "mobile home" is somewhat misleading.  Mobile homes are largely immobile as a practical matter, because the cost of moving one is often a significant fraction of the value of the mobile home itself.  They are generally placed permanently in parks; once in place, only about 1 in every 100 mobile homes is ever moved. [Citation.]  A mobile home owner typically rents a plot of land, called a "pad," from the owner of a mobile home park.  The park owner provides private roads within the park, common facilities such as washing machines or a swimming pool, and often utilities.  The mobile home owner often invests in site-specific improvements such as a driveway, steps, walkways, porches, or landscaping.  When the mobile home owner wishes to move, the mobile home is usually sold in place, and the purchaser continues to rent the pad on which the mobile home is located.' " (*Galland v. City of Clovis* (2001) 24 Cal.4th 1003, 1009.)

15

The leases here involve renting spaces month-to-month, as opposed to, say, a night-to-night rental of a camping site. As our Legislature and Supreme Court have recognized, the lease agreements here do not, in practical effect, concern vehicles that are likely to be moved on the highways. Defendants' argument based on the statutory definitions of "mobilehome" and "recreational vehicle" ignores this practical reality.

Finally, we disagree with defendants' argument that the lease agreements involve interstate commerce because the mobile homes are manufactured outside of the Park. The leases at issue here have nothing to do with the manufacture or sale of mobile homes, and therefore it is irrelevant for our purposes where they were manufactured. Defendant has failed to demonstrate that this case involves interstate commerce such that the FAA preempts state law.[10]

## DISPOSITION

The trial court's order is affirmed. Costs are awarded to plaintiffs. (Cal. Rules of Court, rule 8.278(a).)

/s/
Duarte, Acting P. J.

We concur:

/s/
Renner, J.

/s/
Earl, J.

---

[10] Based on the foregoing, we do not address defendants' arguments regarding the validity or enforceability of the ADR provisions, nor do we address the trial court's alternative basis for denying defendants' petition: that the ADR provisions were void under Civil Code section 798.19.