Filed 4/4/23 Tam v. KMS Automotive CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MAN NA TAM,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KMS AUTOMOTIVE, INC., et al.,<br><br>    Defendants and Appellants. | B311407<br><br>(Los Angeles County<br>Super. Ct.<br>No. 19STCV45372) |

APPEALS from an order of the Superior Court of Los Angeles County, Susan Bryant-Deason, Judge. Reversed with directions.

Fisher & Phillips, Nicole Golob and Megan E. Walker for Defendants and Appellants KMS Automotive, Inc., dba Browning Mazda of Alhambra, and Dick Browning Automotive Group.

Foley & Mansfield, Margaret I. Johnson and Elizabeth J. Carpenter for Defendant and Appellant Adrian Hernandez.

McCarty Legal, John McCarty; Law Office of Kenneth E. Gertz and Kenneth E. Gertz for Plaintiff and Respondent.

Plaintiff sued her former employer (a car dealership and a closely related company) and a manager who worked for the same employer. The employer moved to compel arbitration based on an arbitration agreement plaintiff signed when she began working. After a delayed service of the summons and complaint, the manager filed a notice of joinder, joining in the employer's motion to compel arbitration. The trial court denied the motion to compel arbitration, based on Code of Civil Procedure, section 1281.2, subdivision (c) (hereafter section 1281.2(c)). The employer and the manager separately appealed.

Applying a de novo standard of review to undisputed facts, we reverse. Although the manager is not a signatory to the arbitration agreement, he may enforce its terms as an agent of the dealership and under the doctrine of equitable estoppel, and he is not a third party under section 1281.2(c). Plaintiff's claims against the dealership and manager all fall within the scope of the arbitration agreement, and no contractual defenses to the agreement are applicable. We reverse the court's denial of the motion to compel and direct the court to order the parties to arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties to this case are plaintiff and respondent Ma Na Tam, and defendants and appellants KMS Automotive Inc., dba Browning Mazda of Alhambra, Dick Browning, Inc., and Adrian Hernandez. We will refer to the two corporate defendants collectively as the dealership.[1] Adrian Hernandez is a dealership

---

[1] This approach is consistent with the parties' briefing.

employee, and during the relevant time frame held the position of desk manager for sales or finance manager. Tam began working at the dealership in April 2017, after signing a number of employment-related documents and forms, including a form entitled "EMPLOYEE ACKNOWLEDGEMENT AND AGREEMENT–AGREEMENT TO ARBITRATE" (the arbitration agreement).

## A. Tam's lawsuit against the dealership and Hernandez

In April 2020, approximately three years after commencing employment, Tam filed a first amended complaint (complaint) against the dealership and Hernandez.[2] The complaint allegations depicted the dealership as a racially and sexually charged environment in which Tam and other Asian employees and customers were subject to harassing, discriminatory, and retaliatory acts. Tam alleged Hernandez drugged and raped her on multiple occasions, and the dealership did not take appropriate action in response to her complaints. Tam's complaint alleged 12 causes of action: seven causes of action were asserted against the dealership alone,[3] and five causes of

---

[2] The initial complaint was filed in December 2019.

[3] The causes of action against both defendants alleged harassment and failure to protect in violation of the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.), sexual assault/battery, intentional infliction of emotional distress, wrongful harassment in violation of public policy, and violations of the Unfair Business Practices Act (Bus. & Prof. Code, § 17200 et seq.).

3

action were alleged against both the dealership and Hernandez.[4] There are no separate causes of action asserted solely against Hernandez.

### B. The dealership's motion to compel arbitration

In August 2020, the dealership filed a motion to compel arbitration, with the arbitration agreement attached to a declaration by the dealership's human resources director. Tam opposed the motion, arguing the arbitration agreement was unconscionable and that there was no meeting of the minds, both because she was given very little time to sign a large volume of employment-related materials, and because she has a limited command of English. Tam also argued that her drugging and rape-related claims were outside the scope of the arbitration agreement. Finally, Tam argued she should not be required to arbitrate her claims for violation of the Unfair Business Practices Act and for equitable relief, and that severing these and the drugging and rape-related claims would raise the possibility of conflicting determinations by the arbitrator and the court. The dealership's reply brief pointed out that because the complaint alleged that all defendants acted as agents of the other defendants, an agent/nonsignatory was entitled to compel arbitration. The dealership also argued that Tam's claims based

---

[4] The causes of action against the dealership only were: discrimination/FEHA, retaliation/FEHA, wrongful discharge/FEHA, failure to engage in the interactive process/FEHA, failure to provide a reasonable accommodation/FEHA, violation of the California Family Rights Act (Gov. Code, § 12945.2) and whistleblower protection.

on sexual assault and battery fell under the arbitration agreement's broad language.

## C. Hernandez's joinder

On October 8, 2020, Tam's counsel informed the court that the complaint had been initially served on the wrong individual and that defendant Hernandez had been personally served on October 6, 2020. The court continued the hearing to December 3, 2020 and ordered the parties to serve the correct defendant Hernandez with motion papers for the motion to compel arbitration.

On December 1, 2020, Hernandez filed a joinder to the dealership's notice of motion and motion to compel arbitration and dismiss or stay action. The joinder incorporated "by reference and as fully set forth herein, all papers, exhibits, and other materials related to" the dealership's motion, incorporating by reference all of the dealership's arguments "as if independently filed by Hernandez." Hernandez adopted and fully incorporated by reference the notice of motion, motion, memorandum of points and authorities, and applicable declarations and exhibits submitted by the dealership. He argued he was a third-party beneficiary to the arbitration agreement between Tam and the dealership. Finally, Hernandez argued that Tam would not be prejudiced by his joinder because she had notice of the dealership's motion.

At the December 3, 2020 hearing, the court noted that no party had filed a proof of service showing that Hernandez had been served with the motion to compel arbitration. It continued the hearing to January 8, 2021 and ordered the dealership to

5

serve Hernandez with the moving papers for the dealership's motion to compel arbitration and file a proof of service with the court.

In an opposition filed on December 28, 2020, Tam argued that by filing a joinder instead of a motion to compel arbitration with supporting legal argument and evidence, Hernandez had failed to meet his legal burden to establish that the claims against him were within the scope of the arbitration agreement or that he, as a nonsignatory, was entitled to enforce the arbitration agreement. Tam also argued that Hernandez had violated rule 3.1113(b) of the California Rules of Court by failing to include a motion with a statement of facts, a concise statement of the law, evidence and arguments relied on, and a discussion of the statutes, cases, and authorities relied upon. In addition, Tam objected to the dealership raising for the first time in its reply brief the argument that each defendant was the agent or alter ego of the other, and so any defendant that was not a signatory of the arbitration agreement could still compel the matter to arbitration. Lastly, addressing two additional exceptions to the general rule prohibiting nonsignatories from compelling a signing party into arbitration, Tam argued that neither the equitable estoppel or third-party beneficiary exceptions applied.

Three days later, on December 31, 2020, Hernandez filed a reply brief arguing that his joinder sufficiently incorporated the dealership's moving papers, no separate memorandum was required, and that he was entitled to enforce the arbitration agreement as an employee, as a third party beneficiary, and under the doctrine of equitable estoppel.

## D. The trial court's ruling

On January 8, 2021, the court announced a tentative ruling on the motion to compel, heard argument from counsel, and took the matter under submission. On January 19, 2021, the court denied the dealership's motion to compel arbitration and overruled evidentiary objections to Tam's declaration in support of her opposition. The court's minute order explained, section 1281.2(c) "gives courts discretion to deny a petition to compel arbitration when [a] party to the arbitration agreement is also a party to a pending court action . . . with a third party arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." Relying on Civil Code section 3513, which prohibits private parties from waiving the advantage of a law established for a public reason, the trial court found invalid the language in the arbitration agreement that would have otherwise prohibited the trial court from refusing to stay or deny arbitration under section 1281.2(c).[5] The court then explained that it was exercising its discretion under section 1281.2(c) to deny the motion to compel arbitration, because all three factors of the exception to arbitration had been met. First, as a nonsignatory to

---

[5] The arbitration agreement provided that "any arbitration proceeding must move forward under the [Federal Arbitration Act]'s procedural provisions even if the claims may also involve or relate to parties who are not parties to the arbitration agreement and/or claims that are not subject to arbitration; in other words, a court may not refuse to enforce this arbitration agreement and may not stay the arbitration proceeding, despite the provisions of . . . section 1281.2(c)."

7

the arbitration agreement, Hernandez was a third party. Hernandez's joinder did not include citations to law or evidence in support of his right to enforce the arbitration agreement, and arguments raised in his reply brief would not be considered. Second, Tam's claims against Hernandez and the dealership arose from the same set of transactions, namely Hernandez's acts of sexual assault and harassment. Third, compelling arbitration of Tam's claims against the dealership would raise the possibility of conflicting rulings; for example, a jury might find Hernandez sexually assaulted Tam, while an arbitrator might find the dealership not liable based on insufficient evidence of sexual assault or harassment. Finally, the doctrine of equitable estoppel did not preclude application of section 1281.2(c) because Tam's claims against Hernandez were not intimately founded in and intertwined with the obligations imposed by the arbitration agreement between Tam and the dealership.

The dealership and Hernandez filed separate notices of appeal from the court's denial of the motion to compel.

## DISCUSSION

### A. Standard of review

The parties here dispute the applicable standard of review, disagreeing about whether the trial court's decision denying the motion to compel arbitration involved any factual findings that may be implied because no party requested a statement of decision.

When " 'the language of an arbitration provision is not in dispute, the trial court's decision as to arbitrability is subject to

8

de novo review.' " (*JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1235.)  Because the court's decision was based solely on the arbitration agreement and the complaint, the doctrine of implied factual findings does not come into play. (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 708–709 (*Molecular Analytical*).) The question of whether a defendant is, in fact, a third party for the purposes of section 1281.2(c) is a matter of law subject to de novo review.  (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1406 (*Laswell*).)

### B. Governing law[6]

"A party to an arbitration agreement may petition the court to compel other parties to arbitrate a dispute that is covered by their agreement." (*Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 15; Code Civ. Proc., § 1281.2.)  In determining whether to grant or deny a motion to compel arbitration, the court examines the agreement itself and the complaint filed by the party refusing arbitration.  (*Rice v. Downs* (2016) 248 Cal.App.4th 175, 185.) "Although there is a general policy favoring arbitration, a party cannot be compelled to accept arbitration of a controversy which

---

[6] While we take note of the arbitration agreement's arguably ambiguous choice of law language, including a provision that expressly makes section 1281.2(c) inapplicable, because we conclude on other grounds that section 1281.2(c) does not apply, we decline to address the parties' arguments that section 1281.2(c) is preempted by federal law, or that the parties' express waiver of section 1281.2(c) is invalid. (*Gloster v. Sonic Automotive, Inc.* (2014) 226 Cal.App.4th 438, 446–447.)

they have not agreed to arbitrate." (*Garcia v. Expert Staffing West* (2021) 73 Cal.App.5th 408, 413; see *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 777.) In "California, '[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate.' [Citations.] Generally, an arbitration agreement must be memorialized in writing. [Citation.] A party's acceptance of an agreement to arbitrate may be express, as where a party signs the agreement. A signed agreement is not necessary, however, and a party's acceptance may be implied in fact [citation] or be effectuated by delegated consent [citation]. An arbitration clause within a contract may be binding on a party even if the party never actually read the clause." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.)

"Under both California and federal law, arbitration is strongly favored and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. [Citations.] The burden is on the party opposing arbitration to show the agreement cannot be interpreted to apply to the dispute. [Citation.] Whether a contract is reasonably susceptible to a party's interpretation can be determined from the language of the contract itself. [Citation.] The policy in favor of arbitration does not apply when the contract cannot be interpreted in favor of arbitration. There is no policy in favor of arbitrating a dispute the parties did not agree to arbitrate." (*Balandran v. Labor Ready, Inc.* (2004) 124 Cal.App.4th 1522, 1527–1528.)

The trial court has discretion, under section 1281.2(c), to deny a petition to compel arbitration if a party to the arbitration agreement is also a party to a pending court action "with a third

party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." This statutory exception " 'addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement.' " (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393.) It does not apply, however, "when all defendants, including a nonsignatory to the arbitration agreement, have the right to enforce the arbitration provision against a signatory plaintiff." (*Laswell, supra*, 189 Cal.App.4th at p. 1405; see *Molecular Analytical, supra*, 186 Cal.App.4th at p. 709.)

Generally, only a party to an arbitration agreement may enforce it. (*DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1352; *Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539, 549.) In limited circumstances, a nonsignatory to an agreement containing an arbitration provision may compel arbitration of "a dispute arising within the scope of that agreement." (*DMS Services*, at p. 1353.) As relevant here, a nonsignatory's ability to compel arbitration can be grounded on the doctrine of equitable estoppel, or on the nature of the relationship between a party to the arbitration agreement and the nonsignatory, including relationships that reflect an " ' "identity of interest," ' " like " 'principal and agent or employer and employee.' " (*Id*. at pp. 1353–1354; *Jones v. Jacobson, supra*, 195 Cal.App.4th at p. 18, fn. 9.)

"Under the equitable estoppel doctrine, 'a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are "intimately founded in and intertwined"

11

with the underlying contract obligations.' " (*Jarboe v. Hanlees Auto Group*, *supra*, 53 Cal.App.5th at p. 552; see *Molecular Analytical*, *supra*, 186 Cal.App.4th at p. 706 [equitable estoppel].) In addition, "even when an arbitration clause does not expressly extend to agents, an agent for a party may be able to enforce an arbitration clause." (*Fuentes v. TMCSF, Inc.* (2018) 26 Cal.App.5th 541, 550.)

### C. Section 1281.2(c) does not apply because Hernandez is not a third party under that section.

Tam's claims against Hernandez are based on his status as her supervisor and a manager at the dealership that employed both Tam and Hernandez. Accordingly, her claims are indisputably related to her employment at the dealership. Whether as an agent or under the doctrine of equitable estoppel, the law permits Hernandez, a nonsignatory to the arbitration agreement, to compel Tam to arbitrate her claims against him. Because Hernandez can compel arbitration, he is not a third party within the meaning of section 1281.2(c). (*Laswell*, *supra*, 189 Cal.App.4th at pp. 1405–1406; *Molecular Analytical*, *supra*, 186 Cal.App.4th at p. 709.)

The arbitration agreement at issue here is very broadly worded, requiring arbitration of "any and all claims between [Tam] and the Dealership (or its parent or subsidiary companies, owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with [Tam] seeking employment with, employment by, or other association with the Dealership."

Tam's claims against Hernandez for sexual assault, harassment, intentional infliction of emotional distress, and unfair business practices are intimately founded in and intertwined with the employment relationship she had with the dealership, so there is no question that they fall within the scope of the arbitration agreement. Tam's complaint alleges that she was a top sales performer at the dealership, that the dealership negligently hired and retained Hernandez, and that Hernandez engaged in "illegal harassment, discrimination, retaliation and other illegal actions against [Tam] and others, including the hostile work environment, the quid pro quo and the favoritism shown to those who 'give in' sexually and/or those who do not report the sexual harassment, sexual discrimination, sexual assaults, and/or sexual batteries against them." The complaint further alleges that on multiple occasions from December 2017 to at least February 2018, Hernandez "intentionally and deceptively drugged [Tam] and then sexually assaulted, sexually battered, and raped" Tam, that Hernandez was a supervisor over Tam with authority over her position and terms and conditions of her employment, and that the dealership was strictly liable for these acts. Tam also alleged she only endured the hostile work environment and Hernandez's maltreatment of her and other co-workers because Hernandez made it clear that he could "make or break her attempts to do her job—to successfully sell cars—which would adversely affect her job performance, her ability to meet her minimum sales requirements to keep her job, and her ability to bring in commissions."

We are unpersuaded by Tam's explanations about why Hernandez cannot enforce the arbitration agreement under an agency theory or the doctrine of equitable estoppel, and why

13

those principles do not preclude application of section 1281.2(c). Tam's arguments present a limited view of the applicable case law and ignore the broad wording of the arbitration agreement here. In *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, for example, an individual plaintiff brought an action against her former employer and various employees for alleged sexual harassment in the workplace. Similar to the language at issue in the case before us, the arbitration agreement in *24 Hour Fitness* was broadly worded to cover " 'every kind or type of dispute' arising from [plaintiff's] employment, including 'any allegation of wrongful discharge, discrimination, or any injury to [her] physical, mental or economic interests.' " (*Id*. at p. 1209.) Aside from one defendant who admitted to making objectionable statements outside of work, the appellate court reasoned that because plaintiff's harassment allegations arose in the context of her employment, the nonsignatory individual employee defendants could enforce the arbitration agreement between plaintiff and the employer. (*Id*. at pp. 1211–1212; see *Thomas v. Perry* (1988) 200 Cal.App.3d 510, 516 [arbitration agreement between corporate employer and former employee may be invoked by individual employee defendants who were not parties to agreement].)

In addition to the principal and agent relationship between the dealership and Hernandez, section 1281.2(c) is also not applicable here because the equitable estoppel doctrine prevents Tam from avoiding arbitration when her claims against Hernandez, even the tort claims, are inextricably intertwined with her claims against the dealership, all of which arise from and relate to the contractual employment relationship governed by the arbitration agreement. (See *Molecular Analytical*, *supra*,

14

186 Cal.App.4th at pp. 714–715 [courts review the nature of claims asserted against nonsignatory defendant and relationships of persons, wrongs, and issues when applying equitable estoppel]; *Rice v. Downs*, *supra*, 248 Cal.App.4th at p. 186 [broadly worded arbitration language may extend to tort claims arising from contractual relationship between parties].)

### D. Tam's tort-based claims fall within the scope of the arbitration agreement.

Tam contends that any causes of action related to her claims of rape, drugging, and sexual assault are outside the scope of arbitration. Alternatively, to the extent we find her claims against the dealership arbitrable, she asks us to compel arbitration for those claims only, and instruct the trial court to determine if adjudication of the nonarbitrable issues (relating to her claims of rape, drugging and sexual assault) would make the arbitration unnecessary and if so, whether the arbitration order should be delayed.[7]

Keeping in mind a court may only compel arbitration of those disputes that the parties have agreed to arbitrate (*Garcia v. Expert Staffing West*, *supra*, 73 Cal.App.5th at p. 413), we disagree that any of Tam's claims against the dealership or Hernandez fall outside the scope of the arbitration agreement.

---

[7] Tam's brief refers generally to *RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511 (*RN Solution*) as an exemplar for how a trial court might delay arbitration to permit a court trial of nonarbitrable claims. We understand Tam's argument to refer to page 1521 and footnote 16 of the *RN Solution* opinion.

15

" 'In determining the scope of an arbitration clause, "[t]he court should attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made." ' " (*RN Solution*, *supra*, 165 Cal.App.4th at p. 1523.)

The arbitration agreement signed by Tam covered "any and all claims" between Tam and the dealership or its employees "arising from, related to, or having any relationship or connection whatsoever" with Tam's employment by or with the dealership, "whether sounding in tort, contract, statute or equity, . . . . [including] without limitation, any claims of discrimination, harassment, or retaliation," including claims under FEHA.[8] Tam named the dealership and Hernandez as defendants in five causes of action: (1) sexual assault/battery;

---

[8] Tam agreed to arbitrate "all claims, disputes, and controversies that may arise out of or be related in any way to my employment, including but not limited to the termination of my employment and my compensation." The arbitration agreement was very broadly worded, stating it was applicable "to any and all claims between [Tam] and the Dealership (or its parent or subsidiary companies, owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to or having any relationship or connection whatsoever with [Tam] seeking employment with, employment by, or other association with the Dealership, whether sounding in tort, contract, statute or equity, . . . . [including] without limitation, any claims of discrimination, harassment, or retaliation (whether based on the California Fair Employment and Housing Act, Title VII of the Civil Rights Act of 1964, as amended, or any other applicable state or federal laws or regulations), as well as disputes relating to terms or conditions of employment."

16

(2) intentional infliction of emotional distress; (3) wrongful harassment, discrimination and retaliation in violation of public policy; (4) harassment in violation of FEHA; and (5) violation of the Unfair Business Practices Act. Each of these causes of action can be fairly described as arising from or related to Tam's employment by the dealership. The key factual allegations that Tam claims fall outside the scope of the arbitration agreement are allegations that Hernandez drugged and raped her on multiple occasions "at different areas of their place of employment." However, her allegations also specify that when Hernandez intentionally and deceptively drugged and sexually assaulted her, he threatened retribution and conditioned her continued employment on her acquiescing to these acts and not reporting them. Because the arbitration agreement covers claims arising from or related to Tam's employment, regardless of whether the claim sounds in tort, contract, or statute, we are not persuaded by Tam's argument that her allegations of drugging or sexual assault fall outside the scope of the parties' arbitration agreement.

Tam relies on two cases to argue that her claims based on drugging and sexual assault are not arbitrable, but both cases are distinguishable. In *Victoria v. Superior Court* (1985) 40 Cal.3d 734, 737, 745 to 747, the Supreme Court concluded that the agreement of a patient at a hospital to arbitrate claims "arising from rendition or failure to render services" did not clearly extend to claims that a hospital employee sexually assaulted her, and that the ambiguity should be construed against the drafter. In doing so, the court noted that the employee's alleged conduct "was entirely outside the scope of his employment. It had nothing to do with providing, or failing to

17

provide, services." (*Id.* at p. 745.) To the extent Tam relies on *Victoria* to argue that sexual assault is always outside the scope of an arbitration agreement, the differences between the language of the arbitration agreement in that case and the one before us here make the analysis in *Victoria* distinguishable, as that case construed "services"—defined in the agreement as medical and hospital services—to not require arbitration of a cause of action for negligent employment of an individual accused of sexually assaulting a patient. (*Id.* at pp. 742–745.)

In *RN Solution*, *supra*, 165 Cal.App.4th at pages 1514, 1522, plaintiffs RN Solution, Inc. (RNS) and Tanya Woo, its chief executive officer, sued Catholic Healthcare West (CHW) and Stephen Robertson, its vice president, and the court considered the arbitrability of personal injury causes of action (e.g., gender-based violence, assault, false imprisonment, and intentional infliction of emotional distress). The two corporate parties had a recruiting contract under which RNS would recruit nurses for CHW, and the contract required arbitration of " 'any dispute between CHW and [RNS] aris[ing] out of the services contracted for in this Agreement,' " and " 'any dispute arising out of or in connection with this Agreement.' " (*Id.* at pp. 1513–1514.) Robertson and Woo became involved in an intimate relationship, and the complaint alleged that Robertson had coerced Woo into the relationship by threatening her with the loss of the contract and that he soon began a pattern of violent and abusive behavior toward her. (*Id.* at p. 1515.) The court of appeal concluded the battery-related causes of action were not arbitrable, reasoning, "[w]hile the language of the arbitration provision might be broadly construed to cover every type of *business dispute* that might arise between the two signators, it cannot seriously be

18

argued that the parties intended it to cover tort claims arising from an alleged violent physical assault by an employee of one company against an employee of the other in the context of an intimate domestic relationship between them. . . . [N]othing in the language remotely suggests that it was intended to apply to personal injury tort claims arising outside of the business relationship between CHW and RNS." (*Id.* at p. 1523, italics added; see *Medical Staff of Doctors Medical Center in Modesto v. Kamil* (2005) 132 Cal.App.4th 679, 683–684 [stating in dictum that "a punch in the nose during a dispute over a medical billing" would not fall within scope of agreement to arbitrate disputes concerning terms of service agreement between medical group and insurance provider].)

Again, the language of the arbitration agreement here is broader than the language at issue in *RN Solution*, as it is not limited to a business relationship between two corporate parties, but instead requires arbitration for "any and all claims" between Tam and the Dealership (including dealership managers or employees) having any connection to Tam's employment by the dealership, regardless of whether the claim sounds in tort, contract, statute, or equity. As we have already explained, Tam's claims are undisputedly related to her employment with the dealership, so her claims fall squarely within the broad scope of the arbitration agreement. The facts of the current case more closely align with those at issue in *Bigler v. Harker School* (2013) 213 Cal.App.4th 727, where the court found battery allegations against a teacher who had wrapped his arms around a student, jumping up and down and humiliating her, to fall within the arbitration clause in the school's enrollment contract because they reflected the teacher's unfitness and incompetence as a

19

teacher.  (*Id.* at pp. 731, 741.)  While Hernandez's alleged actions, as pleaded by Tam, are extraordinarily outrageous, harmful, and cruel, Tam cannot escape the fact that Hernandez's acts arose in the context of his supervisory role and her employment with the dealership, and are therefore within the scope of the arbitration agreement.

### E. Tam's other defenses to arbitration are not viable.

Tam also contends that the arbitration agreement is unenforceable because the parties lacked mutual assent or because the circumstances made it impossible for her to understand the terms of the arbitration agreement.  We are unpersuaded by both arguments.  (See *Randas v. YMCA of Metropolitan Los Angeles* (1993) 17 Cal.App.4th 158, 163 [failure to read an agreement does not preclude its enforceability]; *Davis v. Kozak* (2020) 53 Cal.App.5th 897, 905 [both procedural and substantive unconscionability must be shown to invalidate an agreement to arbitrate].)

#### 1. *Mutual Assent*

Tam argues that the dealership and Hernandez cannot carry their burden of showing mutual assent.  We disagree, because Tam's signature is evidence of her assent.  " '[O]ne who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it.  If he cannot read, he should have it read or explained to him.' "  (*Randas v. YMCA of Metropolitan Los Angeles*, *supra*, 17 Cal.App.4th at p. 163.)

20

"Generally, a party may not avoid enforcement of an arbitration provision because the party has limited proficiency in the English language. If a party does not speak or understand English sufficiently to comprehend a contract in English, it is incumbent upon the party to have it read or explained to him or her." (*Caballero v. Premier Care Simi Valley LLC* (2021) 69 Cal.App.5th 512, 518–519.)

### 2. *Unconscionability*

Courts have recognized that "[a]rbitration contracts imposed as a condition of employment are typically adhesive." (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 126.) However, both procedural and substantive unconscionability must be shown to invalidate an arbitration agreement. (*OTO,* at p. 125.) "In *Armendariz* [*v. Foundation Health Psychcare Services, Inc.* (2000)] 24 Cal.4th 83, the court held that a mandatory 'arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights created by the FEHA.' [Citations.] To be valid, at minimum the arbitration agreement must require a neutral arbitrator, sufficient discovery, and a written decision adequate enough to allow judicial review. Further, it must include all remedies available in a judicial action and the employee may not be required to pay unreasonable costs or fees. [Citation.] Elimination of or interference with any of these basic provisions makes an arbitration agreement substantively unconscionable." (*Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1248.)

Tam argues that because she was not given an opportunity to read and understand the documents presented to her at the

beginning of her employment, there was no way she could have agreed to its terms. We understand this argument to raise an issue of procedural unconscionability, but without any evidence of substantive unconscionability, this argument is inadequate to invalidate the agreement. Tam's brief does not attempt to show any recognized basis for substantive unconscionability as a basis for invalidating the arbitration agreement, relying instead on her unpersuasive argument that there was no manifestation of mutual assent.

### F. Tam's claims against Hernandez are also arbitrable.

In her respondent's brief, Tam argues that the court did not err in denying Hernandez's joinder with the dealership's motion to compel arbitration, and because Hernandez did not bring his own independent motion to compel arbitration, he lacks standing to appeal the denial of the dealership's motion.

Given that the issues on appeal are subject to a de novo standard of review, we find it unnecessary to decide whether the court erred in concluding that Hernandez's joinder lacked adequate citations to law or evidence in support of his right to enforce the arbitration agreement. (See, e.g., *Barak v. The Quisenberry Law Firm* (2006) 135 Cal.App.4th 654, 661 [finding joinder in special motion to strike effective, because moving party is not required to present admissible evidence]; *Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.App.4th 26, 31, fn. 3.)

Our opinion establishes that based on the arbitration agreement and Tam's complaint, Hernandez has the right to compel arbitration of Tam's claims against him. Tam's counsel

22

acknowledged that Hernandez was not served with a summons and complaint until after the dealership and Tam had already briefed the dealership's motion to compel arbitration. Having briefed the substantive issues in the context of the current appeal, Tam also can no longer claim that she lacked notice of Hernandez's legal theory. (See, e.g., *Felisilda v. FCA US LLC* (2020) 53 Cal.App.5th 486, 493.)

## G. Recent federal legislation

The dealership requested judicial notice of a recent federal law entitled "Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021." According to Tam, "The new law amends the [Federal Arbitration Act] to prohibit employers from requiring employees to resolve sexual harassment and sexual assault claims through private arbitration unless the employee—after the claim arises—voluntarily elects to participate in arbitration." Both parties acknowledge that the law was not in effect when the trial court made its decision, and no party argues that the law has retroactive effect or affects our legal analysis in any way. Therefore, the dealership's request for judicial notice filed on October 19, 2022 is denied.

Our dissenting colleague discusses this new legislation, and his views of the policies behind it, to fashion a new rule that would make all arbitration provisions purporting to cover claims based on sexual assault or sexual harassment per se unconscionable. (Dis. opn., at p. 6, *post*.) The dissent alternatively argues that if specific facts to support substantive unconscionability is still required, it may be found in the case before us. (Dis. opn., at pp. 6–7, *post*.) We decline to adopt the

23

position articulated in the dissent, which in effect attempts to impose the new legislation in this (and other similar) cases by judicial fiat, and contrary to the express terms of the legislation regarding the limits of its retroactive application.

## DISPOSITION

The order is reversed, and the trial court is directed to enter a new and different order granting defendants' motion to compel arbitration. KMS Automotive Inc., dba Browning Mazda of Alhambra, Dick Browning, Inc., and Adrian Hernandez are awarded their costs on appeal.

NOT TO BE PUBLISHED.

MOOR, J.

I concur:

KIM, J.

24

**RUBIN, P. J. – DISSENTING:**

I respectfully dissent. Ma Na Tam alleged that "[o]n multiple occasions from late December 2017 to early 2018," her supervisor, Adrian Hernandez, "intentionally and deceptively drugged [her] and then sexually assaulted, sexually battered, [and] raped [her] including grabbing her, lifting her, pulling off her clothes, sexual touching for gratification, sexual intercourse, oral copulations [and] assault . . . ." In words of our Supreme Court equally applicable here, "Surely it was not contemplated, let alone expected, by either party to the Agreement that this sort of attack would befall petitioner" when she accepted a job at appellants' car dealership seven months earlier. (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744 [order compelling arbitration of sexual assault claim reversed].) "It is, therefore, difficult to conclude that the parties intended and agreed that causes of action arising from such an attack would be within the scope of the arbitration clause." (*Id.* at p. 745.)

"Where an arbitration clause is part of a contract of adhesion, courts will carefully scrutinize the agreement to assure that the arbitration provisions fall within the reasonable expectations of the weaker, or 'adhering' party, and are not unduly oppressive or 'unconscionable.' " (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St*. (1983) 35 Cal.3d 312, 323, fn. 7; see also *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1244–1245.)

The question presented by appellant's motion to compel is whether the parties, in signing an arbitration clause agreeing to

arbitrate "all claims, disputes, and controversies that may arise out of or be related in any way to [Tam's] employment" understood that arbitration would extend to claims of an employee being drugged, raped, sexually assaulted, or sexually battered. It is true the language of the agreement is broad:[1] Yet it remains difficult to conclude that sexual assault claims are covered when, as the agreement becomes more specific, the arbitration provision expressly identifies only "claims of discrimination, harassment, or retaliation . . . as well as disputes relating to terms or conditions of employment, claims for wages and other compensation, and claims for breach of contract (express or implied), including claims for breach of confidentiality" as examples of what is subject to arbitration. Even if harassment claims are covered, sexual assaults are far outside the reasonable expectations of what may arise from employment.

As a second ground for affirming the trial court's ruling, I also find the arbitration agreement unconscionable. Among the few state law defenses to arbitration provisions that are still available after *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S.

---

[1] "This agreement to submit to binding arbitration applies to any and all claims between me and the Dealership (or its parent or subsidiary companies, owners, directors, officers, managers, employees, agents, and parties affiliated with tis employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association of Dealership, whether sounding in tort, contract, statute, or equity, that would otherwise require or allow resort to any court or other governmental dispute resolution forum."

333 is unconscionability. For sexual assault and sexual harassment claims, Congress has now invalidated and made unenforceable predispute agreements to arbitrate such claims. Plaintiffs who have signed predispute agreements but who have not filed their complaints no longer have to rely on a finding of unconscionability to invalidate arbitration provisions respecting such claims. Under the "Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021" (9 U.S.C. §§ 401, 402), "at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." Congressional debate on the bill suggests that the move to invalidate these arbitration provisions had its genesis in the state law doctrine of unconscionability. As one member of the House of Representatives put it, forcing arbitration on victims of sexual assault and harassment "has created a situation that, related to sexual assault and sexual harassment, is unconscionable. It shocks the conscience. And in fairness, it is a violation of public policy, in my opinion, and should be eliminated as part of a contract." (Remarks of Rep. Griffith, Debate on H.R. No. 4445, 117th Cong., 2nd Sess., 168 Cong. Rec. H983-09 at pp. *H986-*H987 (2022).)

Our Fourth District recently concluded the federal statute is not retroactive to cases, like Tam's, that were filed before the legislation was enacted. "During debate, Congress clarified that the Act is retroactive 'as to contracts currently signed,' but not to

3

'cases currently pending.' " [Citation omitted]. In other words, the Act is only applicable to cases filed after its enactment." (*Murrey v. Superior Court of Orange County* (2023) 87 Cal.App.5th 1223 (*Murrey*).)

For reasons I explain shortly, my dissent neither adopts nor rejects Murrey's holding. I observe only that at least one commentator has written that retroactive application of the statute is its only sensible construction, at least as to cases, like this one, not presently in arbitration. "Interpreting the statute as retroactively effective is consistent with the legislative history of the Act. During debate, Congress clarified that the Act is retroactive 'as to contracts currently signed,' but not to 'cases currently pending.' Consistent with this notion, legislative debate highlighted the importance of the Act's retroactive impact. For example, U.S. Sen. Charles Schumer noted that '[t]he good news about this legislation is all the clauses that people already signed in their employment contracts, even when they didn't know about it, will no longer be valid. So it not only affects the future but affects those who signed in the past.'[] *Ultimately, to meet the purpose of the Act, courts must interpret it to apply retroactively to cases not yet filed in arbitration*, to provide survivors of sexual harassment and assault the choice of how to pursue their claims." (Laura Farley, *Ending Forced Arbitration Understanding the New Federal Law That Prohibits Mandatory Arbitration in Matters of Sexual Assault or Harassment*, Bench & B. Minn., July 2022, at 26, 29; italics added.)

Murrey rejected application of the federal statute to the case before it. It nevertheless reversed the trial court's order compelling arbitration, finding the arbitration agreement unconscionable, the doctrine the Congressional debate suggests

motivated the passage of the federal law. The majority suggests – and I agree it is only a suggestion – Tam may have demonstrated procedural unconscionability, yet the majority finds that her argument lacked substantive unconscionability. (Maj. Opn at p. 22 ["We understand this argument to raise an issue of procedural unconscionability, but without any evidence of substantive unconscionability, this argument is inadequate to invalidate the agreement."].)

To this, I say that Congress has suggested that forced arbitration of sexual assault and sexual harassment claims in and of itself is unconscionable. There need be no delineation of procedural and substantive elements. Even if substantive unconscionability is still required for the dwindling number of cases not covered by the new federal law, I find it here. Our Supreme Court has stated, "As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." ' [Citation.]" (*Baltazar v. Forever 21, Inc., supra*, 62 Cal.4th at p. 1243; italics added.) In finding unconscionability the Murrey court summarized existing law on the subject: " ' "The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as ' " '*overly harsh*' " ' [citation], ' "*unduly oppressive*" ' [citation], ' "*so one-sided as to 'shock the conscience*' " ' [citation], or '*unfairly one-sided*' [citation]. All of these formulations point to the central idea that the unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' [citation], but with terms that are

5

'unreasonably favorable to the more powerful party' " ' " (*Murrey, supra,* 87 Cal.App.5th at p. 1237, italics added.)

For cases that the federal statute does not yet reach, our state courts should apply the state law of unconscionability to sexual assault and harassment claims in a manner consistent with the federal statute. If it is still necessary to tether Tamara's defense to the notion of substantive unconscionability, then the old "one-sided" aspect of substantive unconscionability is staring us right in the face. I imagine one could spend hours or even years on WestLaw or Lexis and still not find a case where a corporate employer sued an employee for sexual assault.[2]

The majority paints my dissent as a disguised effort of ruling by judicial fiat. Respectfully, that is not what I have done.

Action by judicial fiat for the most part involves a court intruding on the power of the Legislature. (See e.g., *People v. Torres* (2020) 48 Cal.App.5th 731, 756 ["This type of ambiguity just underscores the importance of leaving such matters to the legislature, which is better suited to dictate the required method, content, and timing of notice obligations than an appellate panel can do by judicial fiat."].) But reconsidering the contours of unconscionability in light of Congressional history of legislation on the very same subject matter – sexual assault and sexual harassment – does not intrude on the legislative prerogative. Unconscionability is largely a feature of the common law, not legislation. (See e.g., *Epic Systems Corp. v. Lewis* (2018) 138 S.Ct. 1612, 1623 ["The employees' efforts to distinguish Concepcion fall short. They note that their putative NLRA

---

[2] Appellants here are KMS Automotive, Inc. and Dick Browning, Inc.

6

defense would render an agreement 'illegal' as a matter of federal statutory law rather than 'unconscionable' as a matter of state common law."].)  I merely suggest a different understanding of unconscionability, and in a way that happens to be consistent with Congressional action.  There are no fiats.

I conclude that the arbitration provision here is unconscionable and may not be enforced for that reason.  I also conclude that Tam's sexual assault claims fall outside of the scope of the arbitration agreement as not within the reasonable contemplation of the parties.  Accordingly, I would affirm the denial of appellants' motion to compel arbitration as to the first, eighth, ninth, eleventh, and twelfth causes of action.[3]  I would reverse the court's order denying the motion to compel (and direct the trial court to enter an order compelling arbitration of) the second, third, fourth, fifth, sixth, seventh, and tenth causes of action.  I would then remand the matter for further proceedings consistent with the views that I have expressed.

RUBIN, P. J.

---

[3] At pages 53-54 of her Respondent's Brief, Tam argues, "Alternatively, assuming this Court would require the Respondent's claims to be arbitrated, at the very least the Court should follow the path laid out by the *RN Solution, Inc.* [*v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511] court quoted above – determine the causes of action based on the claims of rape, drugging and sexual assault (upon which all of the claims against Hernandez are based) are not arbitrable, and compel only the remaining causes of action to arbitration."

7